

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 20CR 10016 |
| | ) |
| v. | ) Violations |
| | ) |
| HASSAN ABBAS | ) Count One: Money Laundering |
| | ) (18 U.S.C. § 1956(a)(1)(B)(i)) |
| Defendant | ) |
| | ) Counts Two-Three: Unlawful Monetary |
| | ) Transactions |
| | ) (18 U.S.C. § 1957) |
| | ) |
| | ) Forfeiture Allegation: |
| | ) (18 U.S.C. § 981(a)(1)) |
| | ) |
| | ) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.      Hassan Abbas ("ABBAS") was a Belgian national living in the United States and

a licensed attorney in Chicago, Illinois.

2.      Phoenicia Trust, Ltd ("Phoenicia Trust") was a shell corporation incorporated in

Illinois on July 7, 2017 by an individual known to the Grand Jury.   Phoenicia Trust was

involuntarily dissolved on December 14, 2018.

3.      Sparta Gijon, Inc. ("Sparta") was a shell corporation, incorporated in California

on December 11, 2017 via Registered Agents Inc., a corporation dedicated solely to helping

individuals incorporate their businesses.   Sparta's incorporation documents list ABBAS as the

Chief Executive Officer, Secretary, and Chief Financial Officer.

1

4.     Victim 1 was a resident of Framingham, Massachusetts.

5.     Victim 2 was a resident of Framingham, Massachusetts.

6.     Victim 3 was a resident of Marblehead, Massachusetts.

7.     "Romance scams" refer to a type of fraud that is enabled by the creation of fictitious profiles on online dating or social websites.   Individuals perpetuating romance scams use these online dating profiles to gain the trust of potential victims, and once that trust is gained, direct victims to transfer money under false pretenses.   A common narrative used to trick victims into a "romance scam" is to convince the victim to wire funds to cover "taxes" on nonexistent money that is to be "transferred" into their account.   The scam frequently employs the use of "spoof" emails that appear to be the genuine email address of a legitimate business or banking institution.   In reality however, the email address provided by the scammer is a slight variation of the "true" email address and the victim is actually communicating with the bad actor(s) that are running the scheme.

The Money Laundering Activity

a. *Victims 1 and 2 Send Funds to the Phoenicia PNC Account Controlled by ABBAS and ABBAS Transfers Funds from the Phoenicia PNC Account to His Personal Bank Account.*

8.     On or about July 10, 2017 ABBAS opened a bank account for Phoenicia Trust at PNC Bank ("Phoenicia PNC Account").   On the bank opening documents, ABBAS is listed as the President of Phoenicia.   ABBAS was listed as the sole signatory on Phoenicia PNC Account opening documents.

2

9.    In August 2017, Victim 1, and his wife, Victim 2, both Brazilian immigrants, were in the process of purchasing a home after saving approximately $30,427 from their two small businesses.

10.    On or about August 22, 2017, shortly before the scheduled real estate closing, Victim 1 received an email containing closing instructions from someone impersonating his real estate attorney. The email instructed Victim 1 to wire his down payment to the Phoenicia PNC Account.

11.    Following these instructions, Victim 1 wired $30,427 to the Phoenicia PNC Account.

12.    In fact, the email was not from Victim 1 and 2's real estate attorney and the money was not used for the real estate transaction described.

13.    On or about August 23, 2017, ABBAS withdrew funds from the Phoenicia PNC Account in the amounts of $3,000, $2,000, $2,000, $500 and $500.

14.    ABBAS subsequently initiated two wire transfers between the Phoenicia PNC Account and his personal bank account at PNC (the "ABBAS PNC Account"). On August 24, 2017, ABBAS sent $7,500 from the Phoenicia PNC Account to the ABBAS PNC Account. On August 29, 2017, ABBAS sent $7,582 from the ABBAS PNC Account to the Phoenicia PNC Account.

   b.   *Victim 3 Sends Funds to the Sparta U.S. Bank Account Controlled by ABBAS and ABBAS Transfers Funds Abroad*

15.    On or about January 31, 2018, ABBAS opened a bank account on behalf of Sparta at U.S. Bank (the "Sparta U.S. Bank Account"). ABBAS is listed on the account opening

documents as the sole signatory and "owner" of Sparta, and ABBAS's cell phone number is listed as the sole contact number associated with the Sparta U.S. Bank Account.

16.     On or about November 8, 2018, Victim 3 was contacted by an individual known to her as "James Deere," via her Match.com account.   Soon thereafter, "Deere" stated he was going to deactivate his Match.com account and convinced Victim 3 to begin communicating with him through email.   In reality, an individual known to the Grand Jury was controlling "Deere's" email account.

17.     From the inception of their "relationship," this individual, purporting to be "Deere," began a campaign to lure Victim 3 into a false sense of security.   In a November 8, 2018 email, for example, "Deere" wrote to Victim 3, "I am a Fund Manager that loves my work the way I love to enjoy life," "I am financially very ok," and "I lost my wife six years ago and since then, I have not been in any relationship."

18.     Between November 29, 2018 and December 27, 2018, Victim 3 transferred approximately $225,975 to various bank accounts at the direction of "Deere."   Victim 3 believed that these transfers were to cover fees and taxes involved in transferring over $11,000,000 from "Deere" into Victim 3's bank account.

19.     Specifically, on November 22, 2018, "Deere" emailed Victim 3 that he was leaving his job as a fund manager to start his own consulting firm, and stated that he wanted a commission he received from an investment deal deposited into an account in her name until he began his new firm.

20.     On or about November 26, 2018, "Deere" instructed Victim 3 to contact his alleged employer to provide her with instructions.

21.     Once Victim 3 emailed the alleged employer at the address provided by "Deere," she received an email back requesting that she set up an account with Birmingham Credit Union ("BCU").

22.     On November 27, 2018, Victim 3 received an email, purportedly from BCU, stating that the account required a $75,000 opening deposit payment, which could not be deducted from the $11 million dollar deposit that Victim 3 believed to be forthcoming.

23.     As instructed by "Deere," on or about November 29, 2018, Victim 3 deposited a partial "opening deposit payment" of $40,000 to a Bank of America account held by an individual known to the Grand Jury.

24.     On December 6, 2018, Victim 3 received an email from "BCU" purportedly confirming the deposit of the $11,691,464 (which Victim 3 believed to be "Deere's" commission).   On the same date, "BCU" sent Victim 3 another email requesting $160,300 for "tax clearance" of the deposit.

25.     On or about December 12, 2018, "Deere" instructed Victim 3 to wire the funds ($160,300) to the Sparta U.S. Bank Account.   Following instructions, Victim 3 wired $100,000 to the Sparta U.S. Bank Account.

26.     On or about December 13, 2018, ABBAS transferred $82,500 from the Sparta U.S. Bank Account to TCL Air Conditioner, Zhongshan Co., a foreign corporation.

27.     On or about December 14, 2018, Victim 3 wired an additional $11,000 to the same account.

28.     On December 14, 2018, ABBAS transferred a total of $78,400 (two wires, each in the amount of $39,200) from the Sparta U.S. Bank Account to his personal bank account at TD Bank (the "ABBAS TD Bank Account").

29.     On the same date, ABBAS wired $11,813 to Peugeot Antwerpen, $16,430 to Team Bijzondere, $60,000 to Foshan Sunfly Plastic Co, and $120,000 to Ningbo Wanhe Industry Co.  Each of these entities appear to be located abroad.

30.     On December 18, 2018, Victim 3 received an email from "BCU" stating that the anticipated wire of approximately $11 million dollars was transferred to a correspondent bank in Turkey, ("HSBC"), due to "certain diplomatic laws," and that it would be deposited into her "personal account through telegraphic means."

31.     On December 21, 2018, Victim 3 received an email, allegedly from HSBC, stating that $74,975.00 was needed to effect a "fund release order."

32.     On December 22, 2018, Victim 3 received an email, allegedly from HSBC directing her to transfer the funds to an account at Suntrust Bank in the name of Jorobi Corporation (the "Jorobi Suntrust Account").[1]

33.     On or about December 24, 2018, ABBAS transferred $16,000 from the ABBAS TD Bank Account to an individual known to the Grand Jury.

---

[1] Jorobi Corporation was a shell corporation, incorporated in Florida on October 11, 2018.

34.     On or about December 26, 2018, ABBAS transferred $24,000 from the ABBAS

TD Bank Account to a bank account in Ningbo, China held by Ningbo Marine Silkway Impexp

Co Ltd, an international corporation registered in the United Kingdom.

35.     As instructed, on or about December 27, 2018, Victim 3 wired $74,975.00 to the

Jorobi Suntrust Account.

36.     On or about December 31, 2018, a co-conspirator wired $80,666 from the Jorobi

Suntrust Account to Sumec Machinery and Electric Co. Ltd, a Chinese corporation.

37.     Even after Victim 3 cut off contact with "Deere," he continued aggressively

pursuing her for additional funds.   For example, in a January 7, 2019 email to Victim 3, "Deere"

stated, "Please my love help me with this, my end is complete dead end with police here

monitoring my movement from running away, my debt profile here is huge, once this funds get

cleared you take back all your [sic] have spent please, do not allow this to be a waste for us all."

## COUNT ONE
Money Laundering
(18 U.S.C. § 1956(a)(1)(B)(i))

The Grand Jury charges:

38.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-14 of this Indictment.

39.     On or about August 24, 2017, in the District of Massachusetts, and elsewhere, the defendant,

HASSAN ABBAS,

did conduct and attempt to conduct a financial transaction, to wit, the transfer of $7,500 from the Phoenicia PNC Account to the ABBAS PNC Account, knowing that the property involved in such transaction represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18 United States Code, Section 1343, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNTS TWO - THREE
Unlawful Monetary Transactions
(18 U.S.C. § 1957)

The Grand Jury further charges:

40.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-7 and 15-37 of this Indictment.

41.     On or about the following days, in the District of Massachusetts, and elsewhere, the defendant,

## HASSAN ABBAS,

knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000, as set forth below, where such property was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18 United States Code, Section 1343:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 2 | 12/13/18 | $82,500 wire from the Sparta U.S. Bank Account to TCL Air Conditioner, Zhongshan Co. |
| 3 | 12/14/18 | $39,200 wire transfer from the Sparta U.S. Bank Account to ABBAS's TD Bank Account. |

All in violation of Title 18, United States Code, Section 1957.

## MONEY LAUNDERING FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

1.      Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1956 and 1957 set forth in Counts I and II of this Indictment,

### HASSAN ABBAS

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

10

A TRUE BILL

FOREPERSON

_____
PHILIP A. MALLARD
MACKENZIE A. QUEENIN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: JANUARY 21 , 2020
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK
HAROLD PUTNAM
1.21.2020 @ 3:11 PM

11