UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                   )<br>)<br>)<br>HASSAN ABBAS                     ) | Crim. No. 20-10016-LTS |

## GOVERNMENT'S SENTENCING MEMORANDUM

On May 16, 2022, a jury convicted Hassan Abbas of all counts with which he was charged: wire fraud (18 U.S.C. § 1343, Counts One and Two), money laundering (18 U.S.C. § 1956(a)(1)(B)(i)), Count Three), unlawful monetary transactions (18 U.S.C. § 1957, Counts Four and Five), and money laundering conspiracy (18 U.S.C. § 1956(h), Count Six). On October 28, 2022, this Court sentenced Abbas to incarceration of 108 months, three years of supervised release, and restitution and forfeiture, each in the amount of $2,001,853.68.

In imposing this sentence, the Court repeatedly stated its view that 108 months was reasonable given the totality of the circumstances. *United States v. Hassan Abbas*, No. 2020-cr-10016-LTS, Dkt. No. 368 at 49, 55. The Court observed that the crime was "very harmful" and delivered a "huge blow" to the victims, and that Abbas engaged in the "theft of financial independence," destroying the victims' "sense of capacity and independence and ability to navigate in the world." *Id.* at 46. The Court also cited general deterrence; the fact that Abbas was a lawyer and used his profession to attempt to hide his crimes; the duration of the crime; his brazen persistence despite banks' efforts to shut down his conduct; his privileged background; and the impact of the sentence on Abbas' family, among other factors. *Id.* at 49, 50.

On April 29, 2024, the First Circuit Court of Appeals issued a judgment vacating Counts Three through Five based solely upon venue. *United States v. Hassan Abbas*, 100 F.4th 267, 274 (1st Cir. 2024). It affirmed the remaining counts and remanded the case for sentencing. *Id.*

In resentencing Abbas, this Court should impose the same sentence. Nothing has changed—not the Guideline Sentencing Range, not Abbas's culpability, and not the §3553(a) factors this Court carefully considered in imposing a 108-month sentence.

## THE OFFENSE AND RELEVANT CONDUCT

Following extensive pre-trial litigation, a six-day jury trial, and a prior sentencing proceeding, the Court is well acquainted with the facts of the case. *See generally* Presentence Investigation Report (PSR) ¶¶ 6-66; Dkt. No. 347 (government's original sentencing memorandum); Dkt. No. 368 (transcript of prior sentencing proceeding). Cloaked in the deference afforded to him based on his profession, Abbas received money from unwitting scam victims, took a cut for himself, moved money overseas, and lied to bank employees who asked questions about his transactions with fraud proceeds.

Beyond the evidence presented at trial, the statement of offense conduct provides information concerning additional victims that transferred money to Abbas's sham corporate accounts. *See* PSR, at ¶¶ 20, 22-24, 44-45, 49-51, 55-56, 63-66.[1] Section 1B1.3 of the Guidelines specifically states that the Guidelines analysis must account for any applicable relevant conduct. Abbas's fraud against these additional individuals and companies made up parts of the same course

---

[1] Although the government did not call victim 6703663, victim 6592566, or a representative from victim companies 6591827, 6968575, and 6968576 at trial, the government presented evidence concerning these victims' transfers into Abbas's accounts through the testimony of former Lakeside Bank employee Ana Benitez and FBI Financial Analyst John Harger. *See* Trial Tr. Day 4, 52:22, 59:5-12; Trial Tr. Day 5, 39:18, 47:6.

of conduct and common scheme as the fraud counts on which he was convicted. *See* U.S.S.G. § 1B1.3(a)(2); Dkt. No. 343, Ex. 2 (Declaration of John Harger in Support of Government's Motion for Forfeiture). These victims' losses therefore properly factor into the Guidelines calculation, as they did at the first sentencing hearing.

## THE GUIDELINE SENTENCING RANGE

The government agrees with the United States Probation Office's analysis of the Sentencing Guidelines as set forth in the PSR. The total offense level remains at 31 after accounting for all relevant fraud losses and enhancements that the Court found applicable at the prior sentencing hearing, which apply equally on remand. PSR ¶84. The Guidelines Sentencing Range therefore remains unchanged, at 108-135 months. In his original sentencing proceeding, Abbas raised various objections in a last-ditch attempt to dramatically deflate his total offense level. To the extent he renews them, each of those objections should be overruled again for the same reasons the Court explained at the prior sentencing proceeding. *United States v. Hassan Abbas*, 20-cr-10016-LTS, Dkt. No. 368, p. 1-19.

## SENTENCING RECCOMENDATION

The government's recommended sentence—incarceration at the low end of the Guidelines—remains a reasonable and just outcome that is sufficient but not greater than necessary to achieve the goals of sentencing under 18 U.S.C. § 3553(a). The reasons for the government's recommendation are the same—as set forth more fully in the government's original sentencing submission and incorporated by reference herein. *United States v. Hassan Abbas*, 20-cr-10016-LTS, Dkt. No. 347.

A 108-month sentence is appropriate to deter others inclined to participate in business email compromises ("BECs") and similar online schemes. BECs offer a massive return on

3

investment for fraudsters. In 2023 alone, the FBI Internet Crime Complaint Center received approximately 21,489 BEC complaints with reported losses of over $2.9 billion.[2] The damage inflicted by cybercrimes generally exceeded $12.5 billion in 2023, a 22 percent jump from 2022, and more than triple the levels in 2019.[3] These figures almost certainly underestimate the issue, as many victims do not report their losses or even realize they have been scammed.

This sentence is also appropriate to deter lawyers and other professionals from using their specialized skills and standing in society as cover to repeatedly break the law and gain the trust of victims. This particular lawyer engaged in a sustained pattern of criminal conduct that spanned years and involved a parade of shell companies and bank accounts. Whatever misguided reasons motivated Abbas—self-aggrandizement, or perhaps simply greed—he repeatedly chose to continue to receive and launder fraud proceeds and use his cut to fund a flashy lifestyle. This was not an isolated crime of need or opportunity. Finally, Abbas is an individual who has enjoyed immense privilege in life. His personal background presents few, if any, mitigating factors. The Court weighed these considerations in imposing the original 108-month sentence. It should do so again.

The First Circuit reversed Abbas's convictions on the substantive money laundering counts based solely on its conclusion that venue for those crimes did not lie in Massachusetts on the specific statutory basis relied on at trial.[4] Its decision in no way negates or lessens Abbas's

---

[2] https://www.ic3.gov/Media/PDF/AnnualReport/2023_IC3Report.pdf.

[3] *How One Man Lost $740,000 to Scammers Targeting His Retirement Savings*, THE NEW YORK TIMES, available at https:// www.nytimes.com/2024/07/29/business/retirement-savings-scams.html (last visited August 12, 2024).

[4] The First Circuit held, specifically, that "[v]enue did not lie in Massachusetts under [18 U.S.C.] § 1956(i)(1)(B) here because the jury could not conclude from the evidence presented that

4

culpability for washing scam proceeds. As was the case at the first sentencing hearing, Abbas must be resentenced based on his entire course of fraudulent conduct, not based on specific transactions standing alone. The First Circuit's decision presents no reason to depart from the 108-month sentence that the Court originally imposed.

## CONCLUSION

The government respectfully urges this Court to impose the same sentence: 108 months, three years of supervised release, restitution in the amount of $2,001,853.68, and forfeiture in the amount of $2,001,853.68.

                    Respectfully submitted,

                    JOSHUA S. LEVY
                    ACTING UNITED STATES ATTORNEY

By:    */s/ Mackenzie A. Queenin*
        MACKENZIE A. QUEENIN
        DAVID M. HOLCOMB
        ASSISTANT U.S. ATTORNEYS

Date: August 12, 2024

---

the wire transfers from Massachusetts were transactions in "proceeds." The First Circuit declined to consider whether 18 U.S.C. § 1956(i)(3) provided an alternative basis for venue.

## CERTIFICATE OF SERVICE

I, Mackenzie A. Queenin, certify that on this 12th day of August 2024, I caused this document to be filed via the ECF system.

*/s/ Mackenzie A. Queenin*
Mackenzie A. Queenin
Assistant U.S. Attorney

Dated: August 12, 2024